UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | | |
|---|---|---|
| GEORGE BESSER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 0: 15-13-HRW |
| | ) | |
| v. | ) | |
| | ) | |
| M. SEPANEK, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff George Terrance Besser is an individual confined in the Federal Correctional Institution in Pekin, Illinois. Proceeding without an attorney, Besser has filed a complaint asserting civil rights claims pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).[1] [D. E. No. 1] The Court has granted Besser's motion to pay the filing fee in installments by prior order. [D. E. No. 8]

The Court must conduct a preliminary review of Besser's complaint because he has been granted permission to pay the filing fee in installments and because he asserts claims against government officials. 28 U.S.C. §§ 1915(e)(2), 1915A. A

---

[1] While Besser's complaint suggested a possible intent to pursue a claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80, he subsequently disavowed an intent to pursue a FTCA claim at this juncture in a April 6, 2015, letter. [D. E. No. 9]

district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997). The Court evaluates Besser's complaint under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At this stage, the Court accepts the plaintiff's factual allegations as true, and his legal claims are liberally construed in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

## Background

On June 14, 2005, Besser and several co-defendants were convicted in federal court in Michigan of mail fraud, conspiracy to commit mail fraud, and money laundering in connection with a fraudulent investment scheme. On November 14, 2005, Besser was sentenced to a twenty-year term of incarceration and ordered to pay over $12 million in restitution. *United States v. Besser*, No. 1:04-CR-165-RHB-3 (W.D. Mich. 2004). Besser's conviction and sentence were affirmed on direct appeal. *United States v. Flynn*, 265 F. App'x 434 (6th Cir. Feb. 14, 2008).

The facts described in Besser's complaint reach back to 2005. A number of the allegations relate primarily or entirely to Janet Marcusse, one of his co-

defendants at trial. Besser indicates that Marcusse, who remains incarcerated, "prepares his legal work for his approval and submission." [D. E. No. 4, p. 2] However, the Court considers such allegations solely to the extent that they are directly relevant to a claim Besser himself may assert in this action.

Besser alleges that federal agents kidnapped him from Mexico in 2005 to face the federal charges; he was assaulted while in pretrial custody because of a false rumour that he was a pedophile, and during his trial a prescription seizure medication was either denied entirely or its dosage altered. [D. E. No. 1, pp. 6-8] Besser also challenges both the evidence used to convict him and the calculation of his sentence and that of his co-defendants. [D. E. No. 1, pp. 7-12] For instance, Besser alleges that United States Probation Officer Richard Griffis fabricated prior criminal offenses that he alleged Marcusse had committed in order to enhance Besser's own "proportional" sentence [D. E. No. 1, p. 8], and that presiding United States District Court Judge Robert Bell was biased and submitted improper instructions to the jury.[2] [D. E. No. 1, p. 9]

Prior to his incarceration, Besser suffered from a number of pre-existing medical conditions which required prescription medication, including for an overactive thyroid and for seizures. [D. E. No. 1, p. 6] Besser indicates that after

---

[2] Most of these allegations have previously been asserted by Marcusse in motions she filed in the trial court and in the Sixth Circuit.

his sentencing, he was transferred to the Federal Correctional Institution in Ashland, Kentucky ("FCI-Ashland") on March 4, 2006.  [D. E. No. 1, p. 12] Besser alleges that shortly after his arrival, unidentified medical staff changed the dosage on his prescription for levothyroxine (a thyroid hormone replacement), but that after family members complained about his health to Health Services Administrator Amanda Waugaman, the dosage of his medication was returned to its prior level.  [D. E. No. 1, p. 13]

Besser alleges that in Fall 2007, nurse Rena Walker required Besser to take a blood test after he had taken his medications that morning, which caused his results to be abnormally high.  As a result, he contends, physician's assistant Daming reduced the dosage on his levothyroxine prescription, which by January 2008 caused him to have chest pains and a subsequent seizure on January 22, 2008. [D. E. No. 1, p. 14]

Besser was transferred to a federal medical center in Devens, Massachusetts in 2009.  While incarcerated there, on January 20, 2010, he was examined by contract physician Nicholas Mercadante, who indicated that Besser appeared to be "doing well" from a cardiac standpoint, but recommended recurring testing and a "carotid duplex," an ultrasound test used to evaluate blood flow in the carotid arteries.  [D. E. No. 1-9]  Besser was returned to FCI-Ashland on July 8, 2010.  [D. E. No. 1, p. 14]

4

Besser alleges that on March 1, 2012, nurse Rena Walker ordered Besser to perform three days of work duty, and that on those days officer Baugh directed Besser to clean paneling on a ladder, clean mop buckets and wringers, and when Besser refused to perform his assigned task on the third day, he was ordered to complete paperwork. [D. E. No. 1, p. 15]

On June 6, 2012, Clinical Director Kenneth Gomez advised Besser that the Utilization Review Committee ("URC") had approved his request for vascular surgery for coronary artery disease of bilateral carotids as a medically necessary non-emergency procedure. [D.E. No. 1-10] However, on July 2, 2012, Dr. Omran R. Abul-Khoudoud examined Besser and concluded that Besser should continue his prescription for aspirin, and recommended that a computed tomography angiogram ("CTA") be performed on the aortic arch and bilaterally on the carotid arteries. [D.E. No. 1-11] On August 1, 2012, the URC approved the request for a CTA. [D.E. No. 1-12] Besser alleges that he suffered strokes on August 9 and August 23, 2012. [D.E. No. 1, p. 16]

Besser alleges that in September 2012 his cellmate threatened to sexually assault and kill him because the cellmate believed Besser was a pedophile. Besser contends that Judge Bell arranged to have this inmate placed in Besser's cell to kill him in an effort to silence Besser's complaints about improprieties committed by Judge Bell during his criminal trial. [D. E. No. 1, pp. 17-18]

On March 18, 2013, Besser filed a form to seek informal resolution of his claim that his treatment, specifically vascular surgery to treat coronary artery disease of bilateral carotids, has been unreasonably delayed. [D. E. No. 1, p. 18; D. E. No. 1-16]   Three days later Unit Manager B. Sparks responded that his medical care was being managed and that additional care was planned.   Besser contends this assertion was "false and fraudulent" at the time because on June 5, 2014 – over one year and three months later – officer Sparks approved his transfer to another federal prison.

Besser filed an inmate grievance form BP-229 challenging the delay in his medical care to warden M. Sepanek on March 22, 2013.   In his April 15, 2013, response, Sepanek indicated that medical records showed that on October 1, 2012, a vascular surgeon recommended that a left carotid duplex be repeated in six months, and that five months later on March 1, 2013, a bilateral carotid duplex was in fact performed.   On March 8, 2013, the results were reviewed with Besser and he was advised that an appointment would be set up with a vascular surgeon when first available.   Sepanek encouraged Besser to continue with follow-up care until the appointment was established.   [D. E. No. 1-17]  Besser contends that Sepanek's response is "false and fraudulent" because it did not accurately reflect Dr. Abul-Khoudoud's June 2012 determination that vascular surgery was medically necessary. [D. E. No. 1, p. 20]

6

On or about April 17, 2013, Besser appealed Sepanek's denial of his grievance to the Mid-Atlantic Regional Office, contending that medical staff were intentionally delaying the vascular surgery. [D. E. No. 1-22, p. 2] On May 2, 2013, Regional Director C. Eichenlaub denied Besser's appeal stating that Besser's medical care was appropriate and the need for vascular surgery would be determined at a future appointment with a surgeon. [D. E. No. 1-22, p. 1]

On May 10, 2013, Besser appealed to the BOP's Central Office, again contending that vascular surgery for bilateral carotids was approved in June 2012 but had yet to be performed. [D. E. No. 1-14] The Central Office did not address that appeal until October 21, 2014, nearly 18 months later. When the BOP denied Besser's appeal, it stated that:

> [Y]our medical condition of occlusion and stenosis of the carotid artery has been continuously monitored, evaluated and treated according to recommendations made from the vascular surgeon since 2012. ... Records reflect surgery has not been recommended by the vascular surgeon at this time. The consistent recommendation has been to continue on aspirin regime and have carotid duplex evaluations as ordered.

[D. E. No. 1-15]

Besser alleges that on December 26 and 30, 2013, he filed informal grievances complaining that he was suffering from heart pains, constipation, dizziness, numbness in his limbs and fingers, and that the blood tests used to determine the potency of his prescription medications were being improperly

administered. [D. E. No. 1, pp. 20-21] He contends that he received no response to these grievances or to a further grievance he filed on February 11, 2014.

Besser further alleges that while being transported by plane to the federal prison camp in Pekin, Illinois, on July 14, 2014, while deplaning in Chicago he fell down the steps and onto the tarmac, injuring his hip and back. [D. E. No. 1, p. 21] He further contends that medical staff at FCI Pekin refused to take x-rays of his injuries, have failed to return his prescription medications to the appropriate potency, and revoked his soft shoe pass. [D. E. No. 1, p. 21]

## Discussion

Besser generically contends that these actions violated his First Amendment right of access to the courts, his Fourth Amendment right to be free from illegal warrants, his Fifth Amendment rights to due process of law and equal protection, his Sixth Amendment right to be informed of the charges against him and to trial by jury, and the Eighth Amendment's prohibition against cruel and unusual punishment. [D. E. No. 1, p. 23] More specifically, Besser's "Statement of Claims" [D.E. No. 1, pp. 24-26] suggests that he wishes to assert (1) certain claims under the Fourth, Fifth, and Sixth Amendment related to his criminal trial, including pretrial events and proceedings; (2) a deliberate indifference claim arising out of certain aspects of his medical care and the delay in providing vascular surgery; (3) a conditions of confinement claim under the Eighth

Amendment based upon his required performance of work duties; and (4) an Eighth Amendment claim arising out of circulation of false rumors that he is a pedophile.

As a preliminary matter, Besser's "Statement of Claims" purports to identify six distinct claims.  However, the "claims" described are not actually discrete, instead overlapping substantially in their facts, and are offered without the benefit of specifically identified legal claims.  Further, often a particular claim is asserted against an individual notwithstanding the clear absence of any factual allegations by Besser in his complaint even suggesting that defendant's involvement in the conduct underlying the claim.  For instance, Besser asserts his claim regarding the denial of vascular surgery against the medical staff and doctors at FCI-Ashland, persons who were directly involved in the provision of medical care.  But he also asserts it against Judge Bell, a federal judge sitting in a remote state, without any factual allegations to support the claim.

To the extent Besser asserts such claims against defendants who were not, according to his own allegations, directly involved in the underlying conduct complained of, the Court will dismiss the claim against such remote defendants on the ground that it fails to satisfy the minimum pleading standards required to state a claim.  The Supreme Court has made clear that to state a viable claim for relief, a complaint must do more than recite labels, it must contain sufficient factual matter,

accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010). The Court does afford *pro se* plaintiffs additional latitude, but "the less stringent standard for *pro se* plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations." *Kamppi v. Ghee*, 208 F.3d 213 (table), 2000 WL 303018, at *1 (6th Cir. May 14, 2000). Because "[m]ore than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements," a plaintiff's failure to state what facts were allegedly committed by a particular defendant fails to state a claim, and warrants dismissal. *Grinter v. Knight*, 532 F. 3d 567, 577 (6th Cir. 2008) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

Of particular relevance here, Besser's attempt to attach liability to individuals not involved in the conduct complained of through the repeated and unelaborated incantation that they were "[i]ndividuals collaborating and conspiring together in these acts" is woefully insufficient to satisfy the requirement that the plaintiff plead with specificity the overt acts taken in furtherance of the alleged conspiracy. *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985). Because Besser's complaint is devoid of facts showing "which defendants conspired, how they conspired, and how the conspiracy led to a deprivation of constitutional rights," *Harris v. Roderick*, 126 F.3d 1189, 1196 (9th Cir. 1997), his allegations

fail to state a claim against any named defendant who was not directly involved or present in the conduct complained to conspire with those defendants who were. *Trans Rail America, Inc. v. Hubbard Twp.*, 478 F. App'x 986 (6th Cir. 2012) ("It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.") (*citing Spadafore v. Gardner*, 330 F. 3d 849, 854  (6th Cir. 2003)).  Because Besser's allegations fail to state a claim against such remote defendants under this "relatively strict" standard, *Heyne v. Metropolitan Nashville Public Schools*, 655 F. 3d 556, 563-64 (6th Cir. 2011), the claims against them will be dismissed.

## 1

With respect to his specific claims, Besser's sixth claim contends that Judge Bell violated unspecified constitutional rights by telling unidentified persons that he was a "tax protestor," "white supremacist," and/or a pedophile during proceedings prior to and/or during his criminal trial in 2005.  [D. E. No. 1, p. 26] While Besser contends that others "collaborated and conspired" in this effort, *id.*, those contentions fail to state a claim against defendants Griffis, Sparks, Baugh, or Walker, as Besser did not allege or establish any factual basis for such assertion in his complaint against these defendants, and such claims will be dismissed for the reasons stated above.

This claim against Judge Bell must be dismissed for several reasons. First, these alleged actions were taken by Judge Bell in Michigan during Besser's criminal trial. This Court therefore lacks personal jurisdiction over Judge Bell, a nonresident defendant, for a claim arising from acts done outside of and unrelated to this jurisdiction. *Thomas v. Ashcroft*, 470 F.3d 491 (2d Cir. 2006); *Scinto v. Federal Bureau of Prisons*, 608 F. Supp. 2d 4, 8 (D.D.C. 2009).

In addition, Besser's claims are plainly time-barred by the statute of limitations. The applicable limitations period is governed by "the law of the State in which the cause of action arose." *Wallace v. Kato*, 549 U.S. 384, 387 (2007). Section 1983 claims arising out of conduct occurring in Michigan are governed by its three-year limitations period for personal injury actions. Mich. Comp. Laws § 600.5805(10); *Cornelius v. Michigan Attorney Grievance Comm'n*, 510 F. App'x 404 (6th Cir. 2013) ("A three-year statute of limitations applies to section 1983 actions arising in Michigan."); *Curran v. City of Dearborn*, 957 F. Supp. 2d 877, 882 (E.D. Mich. 2013). Because Besser was required to bring suit asserting civil rights claims arising out of conduct occurring in 2005 within three years, his present claims are time-barred.

Third, Besser alleges that this rumor was spread, but makes no allegation that Judge Bell (or any other defendant) was the source of it [D. E. No. 1, p. 7], an allegation necessary to state a viable claim for relief. Finally, to the extent Besser

12

complains of conduct taken by Judge Bell during pretrial and trial proceedings or in furtherance of the management of the case, Judge Bell is entitled to absolute judicial immunity for such conduct. *Bright v. Gallia Co., Ohio*, 753 F. 3d 639, 648-49 (6th Cir. 2014); *Mireles v. Waco*, 502 U.S. 9 (1991). The Court also notes that because Besser's claim, if proven, would necessarily undermine confidence in the jury verdict against him on criminal charges, the assertion of it is premature until Besser successfully obtains relief from his conviction. *Heck v. Humphrey*, 512 U.S. 477, 485-87 (1994); *Akers v. Martin*, 227 F. App'x 721, 723 (10th Cir. 2007). In light of the other bases for dismissal, the Court need not reach this final ground.

2

Besser's second claim appears to assert related allegations regarding the circulation of false rumours that he is a pedophile. [D. E. No. 1, p. 24]  For purposes of organizational clarity, the Court construes this claim as based upon Besser's allegation that this rumour was recirculated in September 2012 while he was incarcerated at FCI-Ashland, and that Judge Bell was responsible for having a hostile cellmate placed in his cell who threatened to kill him. [D. E. No. 1, pp. 17-18]

Besser indicates that in addition to Judge Bell, this claim is made against defendants Sparks, Sepanek, and Baugh. However, Besser's complaint is devoid

of any specific factual allegations against the latter three defendants indicating their involvement in any of the conduct complained of. The claims against them will therefore be dismissed for failure to state a claim. *Grinter*, 532 F. 3d at 577; *Hill*, 630 F.3d at 470.

Regardless of the defendant against whom it is asserted, this claim is barred by the statute of limitations. The events complained of occurred in Kentucky, and therefore its one-year statute of limitations for asserting personal injuries applies. Ky. Rev. Stat. Ann. § 413.140(1)(a); *Hornback v. Lexington-Fayette Urban Co. Gov't.*, 543 F. App'x 499, 500 (6th Cir. 2013). Besser's claim accrued when he knew or should have known of the injury which formed the basis for his claim, *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516 (6th Cir. 1997), which in this case occurred on the same day he was threatened in September 2012. Besser was therefore required to file suit on or before that day in September 2013. Because he did not file suit until March 2, 2015, this claim is time-barred, and must be dismissed. *Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir. 2001).

3

In his fifth claim, Besser claims that Judge Bell and/or probation officer Griffis manufactured prior offenses against him which he did not commit, including an assassination plot against Judge Bell and a claim that Besser was a

14

pedophile, to enhance the criminal sentence that was imposed against him in 2005 [D. E. No. 1, p. 25] and to threaten him while imprisoned in 2012 [D. E. No. 1, p. 26]. This latter aspect of the fifth claim is subsumed in and addressed by the Court's immediately preceding discussion of Besser's second claim, and will be dismissed for the same reasons.

In addition to Judge Bell and officer Griffis, Besser asserts this claim against defendants FCI-Ashland officers Sparks and Baugh, and health care providers or administrators Gomez, Boyd, Waugaman, and Walker. Because Besser makes no allegations in his complaint to provide a factual basis for this claim against these officials at FCI-Ashland, the claims against them will be dismissed. *Hill*, 630 F.3d at 470; *Kamppi*, 2000 WL 303018, at *1.

This claim must be dismissed against Judge Bell and officer Griffis for substantially the same reasons as his sixth claim as explained above. The Court lacks personal jurisdiction over Judge Bell and officer Griffis for their actions undertaken in Michigan and not directed toward the forum state. *Bailey-El v. Federal Bureau of Prisons*, 246 F. App'x 105, 108 (3d Cir. 2007). The actions complained of occurred during Besser's criminal proceedings in 2005 and are thus time-barred by Michigan's three-year statute of limitations. *Cornelius*, 510 F. App'x at 404. The determination of prior offenses used to determine a defendant's criminal sentence is a quintessentially judicial function, and hence Judge Bell is

entitled to absolute judicial immunity. *Cf. Paul v. U.S. Dist. Court*, No. 13-6073, 2013 WL 4176969, at *2-3 (W.D. Ark. Aug. 15, 2013); *Luckie v. Nkrumah*, No. 3:05CV458/RV/EMT, 2006 WL 1529699, at *3-4 (N.D. Fla. May 31, 2006). Probation officer Griffis is entitled to quasi-judicial absolute immunity for his actions in preparing the presentence report, *Gant v. U.S. Probation Office*, 994 F. Supp. 729, (S.D. W. Va. 1998) ("One function for which probation officers uniformly have been granted absolute immunity is the preparation of presentence reports.") (collecting cases); *Holmes v. Crosby*, 418 F. 3d 1256, 1258 (11th Cir. 2005). As before, Besser's claim would necessarily undermine confidence in the criminal sentence imposed against him, and *Heck* therefore requires him to seek and obtain relief from it before he may claim damages arising from its imposition. Finally, claims related to events in 2012 at FCI-Ashland are time barred by Kentucky's one-year limitations period. *Hornback*, 543 F. App'x at 500. This claim will therefore be dismissed.

**4**

In his first claim, Besser contends that nearly all of the defendants showed deliberate indifference to his serious medical needs by failing to provide him with the vascular surgery approved by the URC on June 6, 2012. [D. E. No. 1, p. 24]

This claim must be dismissed against warden Krueger of the Federal Prison Camp in Pekin, Illinois, for lack of personal jurisdiction over him, as his actions

were taken in Illinois after Besser had been transferred out of Kentucky in 2014. [D. E. No. 1, p. 21]  See *Scinto*, 608 F. Supp. 2d at 8.

This claim must also be dismissed against defendants Unit Manager Sparks, Judge Bell, HSA Waugaman, nurse Walker, and physician's assistants Daming and Boyd for failure to state a claim because Besser's complaint makes no allegations indicating that they were involved in making decisions regarding the timing or scheduling of vascular surgery. *Hill*, 630 F.3d at 470.

Besser's allegations and supporting documents attached to his complaint instead indicate that decisions regarding treatment of his coronary artery disease were being made by Dr. Abul-Khoudoud and BOP Clinical Director Gomez.  [D. E. No. 1, pp. 15-16, 19; *see also* D. E. No. 1-19 ("The decisions concerning your medical treatment are made by your clinical team (Dr. Gomez and Ms. Boyd).")] Evidence attached to Besser's complaint establishes that on June 6, 2012, Clinical Director Gomez advised Besser that a prior request for vascular surgery had been approved.  [D. E. No. 1-10]  The plain inference to be drawn from the URC's decision is that prior to that date, Besser's treating physician determined that coronary surgical intervention was warranted and sought approval for that treatment.

However, Dr. Abul-Khoudoud's notes from his July 2, 2012, examination of indicate that Besser suffered from a number of medical conditions, including

carotid artery stenosis, coronary artery disease, hypertension, thyroid disease, and epilepsy. [D. E. No. 1-11, p. 3] Besser contends throughout his complaint that Dr. Abul-Khoudoud had determined that vascular surgery was necessary following this examination. [D. E. No. 1, p. 20] But he misunderstands the doctor's examination notes. Dr. Abul-Khoudoud concluded that Besser should continue his prescription for aspirin, and recommended that a "CTA" be performed on the aortic arch and bilaterally on the carotid arteries. [D.E. No. 1-11, p. 3] "CTA" is a medical acronym for "computed tomography angiogram," which is "a type of medical exam that combines a CT scan with an injection of a special dye called contrast material to produce pictures of blood vessels and tissues in a part of your body." See http://goo.gl/pFZHdQ. In sum, a CTA is not a surgical procedure as Besser asserts, but is a specialized kind of x-ray used to assess the health of the blood vessels to determine what treatment options, of which surgery is but one, are indicated. On August 1, 2012, the URC approved Dr. Abul-Khoudoud's request for a CTA. [D. E. No. 1-12]

While it is clear that Besser's treating physicians had determined that vascular surgery was appropriate as some point prior to the June 2012 URC approval, Dr. Abul-Khoudoud's July 2, 2012, examination notes suggest a plan of conservative treatment with aspirin and continued periodic CTAs and carotid duplex scans to assess the health of Besser's arteries was appropriate. Documents

Besser attached to his complaint confirm that such scans were consistently repeated during the course of his incarceration in 2012, 2013, and 2014. [D. E. No. 1-15, 1-17]

The situation presented is therefore not, as Besser suggests, one where the need for a specific course of treatment was identified by treating physicians as medically necessary but then intentionally not provided by prison officials. Besser does not allege, nor does the record before the Court suggest, that BOP physicians simply stopped treating his medical conditions. Rather, Besser agrees with the prior decision that surgical intervention was warranted, but disagrees with the subsequent course of more conservative treatment coupled with periodic scans. Based solely upon the June 6, 2012, URC approval, Besser takes the position that prompt vascular surgery was mandated, and anything other than that course of treatment constituted deliberate indifference to his serious medical needs. Such is not the law.

To prove a violation of the Eighth Amendment based on deliberate indifference, a plaintiff must prove that he had an objectively serious medical need, that the defendant subjectively perceived a risk of harm, and then disregarded it. *Johnson v. Karnes*, 398 F.3d 868, 874-75 (6th Cir. 2005). There is little question that the significant obstruction present in Besser's carotid arteries presented an objectively serious medical condition, and that the medical staff at FCI-Ashland

were subjectively aware of the health risks it presented.   However, it is equally clear that the repeated and consistent medical care provided by Dr. Abul-Khoudoud and approved by Clinical Director Gomez conclusively rebuts any assertion that they were deliberately indifferent to Besser's medical condition. Where, as here, Besser's health care team consistently provided medical care but he merely disagrees with their professional judgment as to its sufficiency, he fails to state a claim of deliberate indifference under the Eighth Amendment.  *Rouster v. County of Saginaw*, 749 F. 3d 437, 448-49 (6th Cir. 2014); *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (holding that where prisoner receives treatment for his medical condition, to state an Eighth Amendment claim he must show that his treatment was "so woefully inadequate as to amount to no treatment at all."); *Jones v. Muskegon County*, 625 F. 3d 935, 944-46 (6th Cir. 2010).

Here, the documentation provided by Besser indicates that he continued to receive periodic assessments of his medical care through CTAs and carotid duplexes, as well as conservative treatment through prescription medications.  In light of Besser's numerous physical ailments, which included coronary artery disease, hypertension, thyroid disease, and epilepsy [D. E. No. 1-11, p. 3], his treating physicians may have determined that the risks of surgery outweighed its possible benefits.   Whatever the reason, it is plain that Besser was receiving medical treatment in accord with the exercise of his doctor's professional

judgment.   If Besser can establish that their medical judgment was incorrect or amounted to professional malpractice, he may assert that their actions constituted negligence under the FTCA, something he has indicated he is in the process of doing.  [D. E. No. 9]  But negligence in diagnosing or treating a medical condition, unaccompanied by the subjective state of mind required to establish deliberate indifference, does not violate the Eighth Amendment.  *Sanderfer v. Nichols*, 62 F. 3d 151, 154 (6th Cir. 1995).

In addition, any claim under the Eighth Amendment would be time-barred. Besser alleges that he suffered strokes on two very specific dates: August 9 and August 23, 2012.  [D.E. No. 1, p. 16]  Given the specificity of the dates provided by Besser, it is plain that he must have been actually aware that he had suffered a stroke on each of the days indicated.   If so, any cause of action arising out a claimed delay in performing vascular surgery would have accrued at that time. *Wallace v. Kato*, 549 U.S. 384, 388-89 (2007); *Doss v. Rim*, No. 10-7134-VBF(RNB), 2012 WL 3782524, at *5-6 (C.D. Cal. June 20, 2012); *Harrison v. Federal Bureau of Prisons*, No. 8:08-1003-HFF-BHH, 2008 WL 5429827, at *7-8 (D.S.C. Dec. 30, 2008).  Besser was therefore required to file suit within the one year permitted by the applicable limitations period.   *Hornback v. Lexington-Fayette Urban Co. Gov't.*, 543 F. App'x 499, 500 (6th Cir. 2013).  Because Besser

did not file suit until nearly two and a half years later on March 2, 2015, well after the limitations period expired on August 23, 2013, this claim is time barred.

It is true that the running of the limitations period may be equitably tolled while a plaintiff exhausts administrative remedies if required by law. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000). However, such tolling is equitable rather than mandatory, and is not warranted where the litigant fails to act diligently, such as by unreasonably delaying the exhaustion of available administrative processes. *Amini v. Oberlin College*, 259 F. 3d 493, 500-01 (6th Cir. 2001); *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("[w]e have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period ... [but we] have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."). Here, Besser did not file an inmate grievance regarding the delay in receiving vascular surgery until March 2013, approximately eight months after he suffered two strokes. Such a delay does not demonstrate diligence in exhausting administrative remedies required to warrant equitable tolling. *Cuco v. Federal Medical Center-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668 (E.D. Ky. 2006), *aff'd*, 257 F. App'x 897 (6th Cir. 2007).

Finally, Besser asserts this claim regarding his medical care against Unit Manager Sparks, warden Sepanek, MARO Director C. Eichenlaub, and the Acting Director of the BOP's Central Office for Inmate Appeals.  However, their actions were limited to denying Besser's inmate grievances.  Because these individuals were not personally responsible for or involved in the provision of Besser's medical care, the claims against them must be dismissed.  Merely responding to an inmate grievance with respect to medical care is not a basis to impose liability. *Cuco*, 2006 WL 1635668, at *22 (*citing Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999)); *Alder v. Corr. Medical Services*, 73 F. App'x. 839, 841 (6th Cir. 2003) ("The mere denial of a prisoner's grievance states no claim of constitutional dimension."); *Martin v. Harvey*, 14 F. App'x 307, 309-10 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care.").

**5**

In his fourth claim, Besser alleges that the defendants were deliberately indifferent to his serious medical needs by failing to properly perform blood tests to determine and maintain an appropriate dosage of levothyroxine. [D. E. No. 1, p. 24]  This claim incorporates Besser's factual allegation that the dosage for his levothyroxine medication was reduced for a period of time after his initial arrival at FCI-Ashland in May 2006, and that in Fall 2007 nurse Walker compelled Besser to

take a blood test used to determine his levothyroxine dosage after he had taken his pills that morning which caused his results to be abnormally high and his dosage decreased.  Besser alleges that as a result he had chest pains and a seizure in January 2008. [D. E. No. 1, pp. 13-14]  Besser again complained to Dr. Gomez that medical staff were performing the wrong kind of blood test to establish his levothyroxine dosage on December 30, 2013, and February 11, 2014.  [D. E. No. 1, pp. 20-21]

Besser's assertion of this claim against defendants Boyd, Dr. Abul-Khoudoud, and FCI-Pekin warden Krueger will be dismissed for failure to state a claim because the complaint makes no factual allegations indicating their personal involvement in the conduct complained of. *Grinter*, 532 F. 3d at 577.  The claim against warden Krueger is independently subject to dismissal for lack of personal jurisdiction over him. *Thomas*, 470 F.3d at 493.

In addition, with respect to all named defendants, Besser began objecting that the prison was administering a dosage of levothyroxine that was too low as early as June 2006.  [D. E. No. 1, p. 13]  Given his conscious and ongoing disagreement with the dose administered, any claim challenging the appropriateness of the dosage accrued at that time, *Wallace*, 549 U.S. at 388, and the limitation period expired one year thereafter. *Hornback*, 543 F. App'x at 500. The last time Besser alleges he expressed his disagreement with the levothyroxine

dosage or the method of blood testing used to determine it was February 11, 2014. [D. E. No. 1, p. 21]  Because Besser did not file suit until more than one year after that date on March 2, 2015, all such complaints regarding his prescription dosage within the scope of the factual allegations Besser actually sets forth in his complaint are time-barred.

Finally, in his complaint Besser notes that this dosage was continually adjusted or altered throughout the course of his incarceration, presumably by his treating physicians.   He does not allege that his doctors or other health care providers withdrew, failed, or refused to provide medication at a dosage that had been prescribed.   Instead, he expressed his disagreement with both the method of blood testing used and the dosage of the medication his doctors chose to prescribe in the exercise of their medical judgment.  As stated above, where medical staff are providing medical care and a prisoner's claim expresses his disagreement with his treatment, such a claim sounds in state tort law for negligence or medical malpractice; it does not indicate his physician's conscious and deliberate disregard for his patient's medical care. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976) ("an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'  Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical

mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") Such claims should therefore be presented in a FTCA action, not under *Bivens*. *Smith v. Tharp*, 97 F. App'x 815, 818 (10th Cir. 2004); *Holloway v. Delaware Co. Sheriff*, 700 F. 3d 1063, 1073 (7th Cir. 2012).

**6**

Besser's third claim contends that the defendants inflicted cruel and unusual punishment in violation of the Eighth Amendment by requiring him to clean paneling while standing on a ladder and to clean mop buckets and wringers between March 1 and March 4, 2012, and by requiring him to walk down steps from an airplane while shackled on July 14, 2014, which caused him to fall and sustain injuries [D. E. No. 1, pp. 15, 21], all with knowledge of his medical conditions and physical limitations. [R. 1, pp. 24-25]

Besser asserts this claim against Judge Bell, Officer Baugh, nurse Walker, and Unit Manager Sparks. With respect to Besser's compelled performance of work duties in March 2012, this claim must be dismissed against Judge Bell and officer Sparks because Besser does not allege that either person was involved. *Hill*, 630 F.3d at 470. Instead, Besser alleged that nurse Walker ordered the work duty and that Baugh carried out that order. [D. E. No. 1, p. 15] But these events occurred in March 2012, and Besser did not file his complaint regarding them until

three years later, well past the one-year limitations period of Ky. Rev. Stat. Ann. § 413.140(1)(a). This claim is therefore time barred against all defendants.

With respect to Besser's claim arising out of his fall to the tarmac in Chicago, Besser does not allege that any of the defendants were involved, instead noting that it was federal marshals who kept him shackled while he was deplaning notwithstanding their awareness of his physical limitations. Because his factual allegations do not provide a basis for a cause of action against the persons identified, this claim will be dismissed for failure to state a claim. *Ashcroft*, 556 U.S. at 678.

Accordingly, **IT IS ORDERED** that:

1.    Besser's complaint [D. E. No. 1] is **DISMISSED.**

2.    The Court will enter an appropriate judgment.

3.    This matter is **STRICKEN** from the active docket.

This 23rd day of July, 2015.



Signed By:
*Henry R. Wilholt, Jr.*
United States District Judge